UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| MANDY COLEMAN, ET AL. | CIVIL ACTION NO. 21-0370 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| INTENSIVE SPECIALITY HOSPITAL, LLC | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

Before the Court is a Motion to Dismiss (Record Document 5) filed by Defendant Intensive Specialty Hospital, LLC ("ISH"). Plaintiffs Mandy R. Coleman and Prudence Coleman ("Plaintiffs") filed suit against ISH in Louisiana state court for negligence, breach of contract, and similar claims related to medical treatment. See Record Document 1. ISH seeks to dismiss Plaintiffs' claims for failure to state a claim upon which relief can be granted under Rule 12(b)(6) and lack of subject matter jurisdiction under Rule 12(b)(1). See Record Document 5. Plaintiffs filed an opposition to the motion (Record Document 11), and ISH filed a reply (Record Document 27). For the following reasons, ISH's Motion to Dismiss is **DENIED**.

## FACTUAL AND PROCEDURAL BACKGROUND

This suit arises out of the death of Bobby Ray Coleman ("Coleman") at ISH's Bossier facility on May 3, 2020. See Record Document 1-2 at 4. Coleman was admitted to ISH's facility on April 2, 2020 for continued therapy and rehabilitation after his gall bladder was surgically removed. See id. at 3. Part of Coleman's treatment included respiratory care via nebulizer and breathing treatments. See id. On May 2, 2020, after showing signs of distress, Coleman tested positive for COVID-19. See id. at 4. Coleman was subsequently transferred to ISH's Shreveport hospital, where Plaintiffs allege nursing

1

staff failed to treat Coleman, failed to timely report changes in his condition, and ultimately failed to follow the proper standard of care. See id. Plaintiffs further allege that, as a direct result of ISH staff's failure to administer Coleman's breathing treatments, as prescribed by the doctor before the COVID-19 test, Coleman died on May 3, 2020. See id.

Plaintiffs filed suit in state court alleging negligence, breach of contract, and wrongful death under Louisiana law. See Record Document 11 at 1. Plaintiffs allege that ISH's "failure to act to provide treatment as ordered by Mr. Coleman's physician and failure to adhere to standard of care interventions for prevention of Covid 19 resulted in the death of" Coleman. See id. Plaintiffs further allege that ISH "committed gross negligence and acted with reckless disregard for the safety of Mr. Coleman." See id. at 5. The suit was subsequently removed to federal court by ISH. See Record Document 1. Plaintiffs then filed a Motion to Remand. See Record Document 7. This Court issued an Order adopting the Magistrate Judge's Report and Recommendation to deny the Motion to Remand because diversity jurisdiction exists. See Record Documents 21 & 22. However, the issue of federal question jurisdiction, based on the federal Public Readiness and Emergency Preparedness Act, 42 U.S.C.A. §§ 247d-6d, 247d-6e ("the PREP Act" or "the Act"), was not decided because of the pending Motion to Dismiss, as well as cases across the Fifth Circuit and the country currently deciding related issues. See id.

In their Motion to Dismiss, ISH argues that the suit should be dismissed in its entirety under Rule 12(b)(1) or (b)(6) because the PREP Act preempts Plaintiffs' state-law claims, and ISH is immune from suit under the PREP Act. See Record Document 5-1. Plaintiffs respond that the PREP Act does not apply to their claims against ISH and that complete preemption does not apply to their state-law claims. See Record Document

2

11. In their reply, ISH asserts that Plaintiffs' petition does trigger the PREP Act on its face, and re-asserts that complete preemption exists here. See Record Document 27.

**LAW AND ANALYSIS**

I. **Legal Standard**

   a. **12(b)(1) Standard**

Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998). "In examining a Rule 12(b)(1) motion, the district court is empowered to consider matters of fact which may be in dispute." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001). The court may "make factual findings which are decisive of its jurisdiction." Clark v. Tarrant Cnty., 798 F.2d 736, 741 (5th Cir. 1986). "Courts may dismiss for lack of subject matter jurisdiction on any one of three different bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Id. A motion under Rule 12(b)(1) may be proper when a plaintiff's claims are preempted. See Crawford v. U.S. Dept. of Homeland Sec., 245 F. App'x 369, 374, n.3 (5th Cir. 2007); Smith v. Harvey, 265 Fed. Appx. 197, 200 (5th Cir. 2008); Rittgers v United States, 131 F. Supp 3d 644, 655 (S.D. Tex. 2015).

   b. **12(b)(6) Standard**

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the pleading standard to state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." While some specific causes of

action have a heightened pleading standard imposed on them by the Rules or statute, that is not the case for claims under Title VII. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002). The standard for the adequacy of all complaints under Rule 8(a)(2) is now the "plausibility" standard found in Bell Atlantic Corp. v. Twombly and its progeny. 550 U.S. 544 (2007). Under this standard, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for "failure to state a claim upon which relief can be granted." Courts must accept all factual allegations in the complaint as true. See Iqbal, 556 U.S. at 678; see also Layne v. Esplanade Gardens Senior, Inc., No. SA-21-CV-00558-XR, 2022 WL 14225362, at *3 (W.D. Tex. Oct. 24, 2022) ("In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party."). However, courts do not have to accept legal conclusions as facts. See id. A court does not evaluate a plaintiff's likelihood for success, but instead determines whether a plaintiff has pleaded a legally cognizable claim. See Thompson v. City of Waco, 764 F.3d 500, 503 (5th Cir. 2014). Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See Iqbal, 556 U.S. at 679. If the complaint does not meet this

4

standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court.'" Twombly, 550 U.S. at 558 (citations omitted).

## II.  Analysis

As mentioned above, this Court has previously held that diversity jurisdiction exists in this suit pursuant to 28 U.S.C. § 1332. See Record Document 21. Thus, to the extent ISH's Motion to Dismiss challenges this Court's subject matter jurisdiction under Rule 12(b)(1), the Court's analysis will be limited to ISH's argument concerning preemption under the PREP Act. See Record Document 5-1 at 12.

### a.  PREP Act does not preempt Plaintiffs' state-law claims

In its Motion to Dismiss, ISH argues that the PREP Act preempts all of Plaintiffs' state-law claims because such claims may only be brought under the exclusive procedures provided in the PREP Act. See Record Document 5-1 at 29. Thus, ISH argues these claims must be dismissed under Rule 12(b)(1) because the federal district court lacks the ability to decide PREP Act claims. See id. However, since ISH's thorough argument on this issue, the Fifth Circuit issued its opinion in Mitchell v. Advanced HCS, L.L.C., 28 F.4th 580 (5th Cir. 2022), directly addressing the issue of the PREP Act's preemptive effect on COVID-19-related state-law claims. In Mitchell, when a resident of a nursing home passed away in May 2020 from complications from COVID-19, her family filed suit in state court for negligence, and the nursing home removed the case based on federal question jurisdiction under the PREP Act. See 28 F.4th 580. The first issue addressed was whether the PREP Act completely preempts the family's state-law negligence claims. See id. The Fifth Circuit held: "The Act does not completely preempt

Mitchell's state-law negligence claims." Id. at 586. The Mitchell court noted that two other federal Courts of Appeals have addressed near-identical arguments in near-identical cases and likewise rejected them. See Maglioli v. Alliance HC Holdings, LLC, 16 F.4th 393 (3rd Cir. 2021) and Saldana v. Glenhaven Healthcare, LLC, 27 F.4th 679 (9th Cir. 2022). Since then, the Fifth Circuit again rejected the complete preemption argument in Perez ex. rel. Estate of Lozano v. Southeast SNF, LLC, 2022 WL 987187 (5th Cir. 2022) (unpublished), and the Seventh Circuit came to the same conclusion in Martin v. Petersen Health Operations, LLC, 37 F.4th 1210 (7th Cir. 2022).

Although each of the above cases dealt with claims against nursing homes, rather than long-term acute care hospitals such as ISH, this Court sees no reason to depart from the Fifth Circuit's holding that the PREP Act does not preempt state-law negligence claims. The Fifth Circuit's published decision in Mitchell is binding on this Court and must be followed. See Campbell v. Sonat Offshore Drilling, Inc., 979 F.2d 1115, 1121 n.8 (5th Cir. 1992) ("It has been long established that a legally indistinguishable decision of this court must be followed by other panels of this court and district courts unless overruled en banc or by the United States Supreme Court."). Thus, ISH's argument that Plaintiffs could not bring their state-law claims outside of the PREP Act's exclusive procedures fails. As the Fifth Circuit has held, Plaintiffs may bring medical malpractice claims outside of the PREP Act's requirements, even if those claims may implicate some form of COVID-19 response. See Mitchell, 28 F.4th at 586; see also Druckman v. Morningside Acquisition I, LLC, No. 22-CV-5324 (PKC), 2022 WL 17336867, at *3 (S.D.N.Y. Nov. 30, 2022) ("Nothing in the PREP Act displaces the 'garden-variety state law claims' at issue here or transforms them into federal causes of actions."). Accordingly, the complete preemption

argument under Rule 12(b)(1) is rejected. Thus, ISH's motion is **DENIED** with respect to the complete preemption basis for dismissal.

### b. ISH's immunity defense under the PREP Act does not require dismissal of Plaintiffs' remaining claims under Rule 12(b)(6)

ISH further argues that, even in the absence of complete preemption, Plaintiffs' state-law claims fall within the purview of the PREP Act, and thus, because ISH is a "covered person" administering "covered countermeasures" under the Act, it is immune from suit. See Record Document 5. Thus, ISH asserts Plaintiffs' claims should be dismissed under Rule 12(b)(6) because ISH has a defense which bars liability for all claims. See id. Plaintiffs respond that their petition does not implicate the PREP Act on its face, and even if it did, ISH has not demonstrated that it is immune from suit under the pleaded facts. See Record Document 11.

As an initial consideration, Plaintiffs' petition does not raise questions of federal law under the PREP Act on its face. See Record Document 1-2. The state court petition raised claims of negligence, breach of contract, and wrongful death under Louisiana law alone. See id.; see also Saldana, 27 F.4th at 688 (holding plaintiffs' complaint raised state-law claims under California law and thus defendant's federal defense under the PREP Act does not create federal question jurisdiction). ISH argues, however, that under a broader reading of Plaintiffs' petition, the claims clearly implicate the PREP Act because the allegations challenge ISH's overall response to the COVID-19 pandemic. See Record Document 27 at 5. Thus, ISH argues, the petition should be analyzed as if the claims fall squarely within the PREP Act's purview, thus providing ISH, as an entity that meets the Act's requirements, with an immunity defense to all of Plaintiffs' claims. See id.; see Record Document 5. Conversely, Plaintiffs argue that, because they allege Coleman did

7

not receive covered countermeasures to COVID-19 and that the primary reason for his death was the staff's failure to administer breathing treatments, the PREP Act cannot apply. See Record Document 11 at 3. In essence, Plaintiffs draw a distinction between action and inaction, and assert that only action is covered by the PREP Act. See id. Thus, according to Plaintiffs, ISH cannot assert PREP Act immunity and obtain dismissal of all claims where ISH failed to act. See id.

Plaintiffs' claims, as alleged in the petition, largely fall into two categories: (1) "failure to act to provide treatment as ordered by Mr. Coleman's physician"; and (2) "failure to adhere to standard of care interventions for prevention of Covid 19." See Record Document 11 at 1. To determine whether ISH can assert PREP Act immunity, this Court must first decide if these claims fall within the purview of the PREP Act. See, for e.g., Jackson v. Big Blue Healthcare, Inc., No. 2:20-CV-2259-HLT-JPO, 2020 WL 4815099, at *6 (D. Kan. Aug. 19, 2020) (noting that "the first step" in the analysis "is determining whether Plaintiff's allegations fall within the purview of the PREP Act"). In other words, only if the claims implicate the PREP Act can ISH then assert that the PREP Act provides a shield from liability.

A brief explanation of the PREP Act's general coverage provision may aid in an analysis of the scope of the Act with respect to Plaintiffs' claims here. The PREP Act provides that certain covered persons "shall be immune from suit and liability under Federal and State law" for "all claims for loss caused by, arising out of, relating to, or resulting from" the "administration" or "use" of a "covered countermeasure." See 42 U.S.C. § 247d-6d(a)(1). In other words, to establish coverage under the PREP Act, "there must be a 'causal relationship' between an injury and the 'administration to or use by an

8

individual of a covered countermeasure.'" See Mitchell, 28 F.4th at 586 (quoting 42 U.S.C. § 247d-6d(a)(2)(B)). A "covered countermeasure" is "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19, or the transmission of SARS-CoV2 ... or any device used in the administration of such product." Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19, 85 Fed. Reg. 15198, 15202 (Mar. 17, 2020). Here, ISH asserts that Plaintiffs' claims contest the use of "covered countermeasures" such as personal protective equipment ("PPE") and respiratory treatment equipment.

### i. Failure to provide ordered treatment to Coleman

The first of the Plaintiffs' central allegations is that ISH staff failed to administer the breathing treatments that were ordered by Coleman's physician before his COVID-19 diagnosis. See Record Document 1-2 at 5–6. Plaintiffs' state court petition asserts: "It is alleged that as a direct and proximate result of [ISH's] gross negligence and breach they significantly contributed to [Coleman's] death on May 3, 2020 by denying him any opportunity for respiratory care and treatment as ordered." See id. at 6. Although ISH asserts in their reply that the decision not to provide respiratory treatment "was made in light of federal guidelines for treating COVID-19 patients," such a claim cannot controvert Plaintiffs' well-pleaded complaint at this stage of litigation. See Record Document 27 at 26. Plaintiffs' pleadings clearly allege that ISH staff failed to follow a doctor's direct orders to provide breathing treatments to Coleman—treatments that were administered for about a month before Coleman's COVID-19 diagnosis. See Record Document 1-2 at 3–4. Under the Rule 12(b)(6) standard, such an allegation must be taken as true. See

9

Twombly, 550 U.S. at 555; Neitzke v. Williams, 490 U.S. 319, 326, 109 S. Ct. 1827 (1989) (nothing that Rule 12(b)(6) requires "operating on the assumption that the factual allegations in the complaint are true").

Thus, this Court finds that Plaintiffs' claim that ISH staff disregarded Coleman's medical needs and failed to provide care with respect to his breathing treatments does not implicate the use or administration of any covered countermeasure under the PREP Act. Rather, as plead, the claim concerns a failure to follow prescribed treatment predating any COVID-19 diagnosis. Thus, ISH cannot assert PREP Act immunity for the alleged failure to administer the ordered respiratory treatment; any argument concerning the underlying reasons for such a failure would simply create an issue of fact, better resolved at a later stage of litigation. Thus, the Motion to Dismiss is **DENIED** with respect to Plaintiffs' medical malpractice and breach of contract claims concerning the failure to administer breathing treatments to Coleman.

### ii.  Failure to protect Coleman from contracting COVID-19

The second category of Plaintiffs' claims generally includes allegations that ISH and its staff did not adequately protect Coleman from contracting COVID-19, primarily by failing to provide proper PPE and to ensure proper infection control. See Record Document 1-2 at 5. The key dispute among the parties as to this category of claims is the distinction between action and inaction, as it relates to the administration or use of covered countermeasures under the PREP Act.

Plaintiffs point this Court to several district court cases around the country in which a distinction is drawn between failure to provide treatment at all versus improper administration of treatment—the former not being covered by the PREP Act, and the latter

falling within the Act's purview. See Record Document 11 at 6. For example, in Jackson v. Big Blue Healthcare, Inc., a district court in Kansas limited the scope of the plaintiff's pleadings to find that allegations "that the decedent died of COVID-19 because Defendants failed to take preventative measures to stop the entry and spread of COVID-19 within the facility" are not covered by the PREP Act. See 2020 WL 4815099, at * 6. Because the plaintiff's case was "premised on inaction," the defendants could not argue that the allegations were actually related to the administration or use of countermeasures as defined by the PREP Act—that they were based on "action." See id. at 7. Defendants argued that the allegations could still be read to cover "action" because "it need not be the decedent who received the countermeasure, so long as there was administration of a countermeasure to someone." See id. at 8. However, the district court again referred back to the complaint, in which the plaintiff did "not allege that the administration or use of a countermeasure to someone else somehow caused the decedent's death." See id. Thus, the plaintiff's claims were still not based on "actions" that could be covered by the PREP Act. See id.

Other courts around the country reached an identical conclusion when presented with pleadings alleging inaction on the part of care facilities. See, for e.g., Gunter v. CCRC OPCO-Freedom Square, LLC, No. 8:20-CV-1546-T-36TGW, 2020 WL 8461513, at *4 (M.D. Fla. Oct. 29, 2020) (holding "Plaintiff does not assert any theory of liability that is in any way related to the Defendants' 'physical provision' of any 'countermeasure,'" thus removing claims from scope of PREP Act); Gwilt v. Harvard Square Ret. & Assisted Living, 537 F. Supp. 3d 1231, 1240 (D. Colo. 2021) ("At least a dozen courts around the country have determined that where a plaintiff's claim is premised on a failure to take

preventative measures to stop the spread of COVID-19, as here, and where none of the alleged harm was causally connected to the administration or use of any counter-measure, which is the focus of the PREP Act, the PREP Act does not apply.").

In the present case, Plaintiffs do not allege that Coleman's death was "causally connected" to the use or misuse of a covered countermeasure. Instead, much like the plaintiffs in the cases cited above, Plaintiffs here allege that ISH and its staff failed to take any action to prevent Coleman, or other patients, from contracting COVID-19. See Record Document 1-2. Further, Plaintiffs do not allege that some patients received the proper care while Coleman did not—rather, Plaintiffs plead generally that ISH failed "to ensure proper PPE and protections for their patients" as a whole. See id. at 5. Thus, Plaintiffs' petition clearly asserts claims for inaction on behalf of ISH, not action.

ISH responds that distinguishing between action and inaction creates a "false dichotomy" that "flies in the face of the Fourth Amendment to the Declaration and Advisory Opinion 21-01." See Record Document 27 at 7–8; Record Document 5 (Ex. 9: 85 Fed. Reg. 79190). However, although later HHS Secretary Amendments state that an "inaction claim" is not automatically beyond the Act's scope, "such claims only fall under the scope of the PREP Act where: (1) there are limited covered countermeasures; and (2) there was a failure to administer a covered countermeasure to one individual because it was administered to another individual." See Lyons v. Cucumber Holdings, LLC, 520 F. Supp. 3d 1277, 1285 (C.D. Cal. 2021), appeal dismissed, No. 21-55185, 2022 WL 3931465 (9th Cir. July 5, 2022). "[P]ursuant to the HHS Secretary's December 3, 2020 Amendment, there is only immunity for 'inaction claims' when the failure to administer a covered countermeasure to one individual has 'a close causal relationship' to the administration

12

of that covered countermeasure to another individual." See id. at 1285–86. The Lyons case, decided after the Fourth Amendment and Advisory Opinion 21-01 that ISH relies heavily on in its reply, thus explains how the action versus inaction distinction remains relevant in determining whether state-law claims can fall within the purview of the PREP Act. See id.; see also Record Document 5 (Ex. 10: HHS Advisory Opinion 21-01) (issued January 8, 2021).

Thus, there is no indication that courts must avoid categorizing a plaintiff's claims as premised on inaction; rather, there are simply additional considerations after this initial distinction between action and inaction is made. "Even if the Fourth Amendment provides support that the PREP Act applies to inaction or failure," where there are no allegations of "any loss from the 'prioritization or purposeful allocation' of a countermeasure," or allegations "that the loss was caused by the non-use or non-administration of covered countermeasures linked to the use or administration of that countermeasure to another person instead," the claims do not fall within the scope of the Act. See Gwilt, 537 F. Supp. 3d at 1241; see also Grohmann v. HCP Prairie Village KS OPCO LLC, 516 F.Supp.3d 1267, 1279 (D. Kan. Jan. 29, 2021) ("The court nonetheless concludes that the Declaration's emphasis on causation in the context of non-administration claims reinforces our court's causation analysis in related PREP Act cases."); Hatcher v. HCP Prairie Village KS OPCO LLC, 515 F.Supp.3d 1152, 1162 (D. Kan. Jan. 27, 2021) ("Plaintiffs' allegations do not appear to claim that decedent's death was caused by a decision to ration a covered product or allocate a covered countermeasure to some but not others."); Dupervil v. Alliance Health Operations, LLC, 516 F.Supp.3d 238, 255 (E.D.N.Y. Feb. 2, 2021) ("[T]he crux of Plaintiff's claims is that his father died because

Defendants failed to take certain steps…These alleged failures cannot be said to be administering – or even prioritizing or purposefully allocating – a drug, biological product, or device to an individual within the meaning of the PREP Act such that Plaintiffs' claims are completely preempted."). Simply put, further allegations establishing a causal connection between the inaction and the resulting harm are necessary to implicate the PREP Act.

Understandably, there is little guidance for how courts should decide cases that are premised on COVID-19-related prevention and treatment. Notably, while many cases, including several within the Fifth Circuit, have now addressed the complete preemption issue, fewer courts have discussed the scope of the PREP Act as it relates to a defendant's immunity defense. However, based on the available case law and the relevant HHS regulations, it appears that ISH's argument for immunity under the PREP Act should be rejected. For example, a recent opinion out of the Western District of Texas suggests that a motion to dismiss should be denied where defendants attempt to use a defense under the PREP Act to avoid suit, despite plaintiffs adequately pleading negligence or gross negligence claims. See Layne, 2022 WL 14225362, at *3 ("To the extent that Defendants believe that they have any federal or state defenses to the negligence claims, including defenses under the PREP Act…, such defenses do not affect whether Plaintiffs have sufficiently pled causes of action for negligence and gross negligence."). "Any such defenses cannot be attacked under Fed. R. Civ. P. 12(b)(6), but rather by way of a motion for summary judgment." Id. Thus, ISH seemingly cannot assert absolute immunity under the Act as a basis for dismissal of all claims; importantly, "[a]

defendant's intention to argue an affirmative defense of immunity does not transform the nature of the claims against it." See Druckman, 2022 WL 17336867, at *4.

Plaintiffs here alleged a mere failure to act that ultimately caused Coleman's death, not an improper use of a countermeasure, nor a decision to provide the countermeasure to other patients instead of Coleman. Thus, accepting Plaintiffs' factual assertions as true, and without an alleged causal connection between use of a countermeasure and Coleman's death, Plaintiffs' claims do not fall within the scope of the PREP Act such that ISH can assert absolute immunity from liability. Thus, Plaintiffs' petition, on its face, states claims upon which relief may be granted for ISH's failure to protect Coleman from contracting COVID-19. Thus, ISH's Motion to Dismiss is **DENIED** as to these claims.

### c. Plaintiffs' "willful misconduct" claim

As a final consideration, Plaintiffs assert in their opposition to the Motion to Dismiss that they have successfully alleged a willful misconduct claim against ISH. See Record Document 11 at 5. Specifically, Plaintiffs assert that their petition alleges ISH "committed gross negligence and acted with reckless disregard for the safety of Mr. Coleman and breached their duty." See id. Plaintiffs argue such allegations satisfy the gross negligence pleading standards, and thus, a willful misconduct claim has been properly plead. See id. Conversely, ISH asserts that Plaintiffs failed to adequately plead a willful misconduct claim, and even if such claim were properly plead, it must be pursued administratively in the District of Columbia according to the PREP Act. See Record Document 5-1 at 28.

Despite the Plaintiffs' labelling their gross negligence claim as one for "willful misconduct" in their opposition, this Court finds that the use of such terminology alone does not bring Plaintiffs' claim within the ambit of the PREP Act so as to require dismissal of this claim. As discussed extensively above, Plaintiffs' allegations do not assert action

by ISH that could fall within the PREP Act's scope; this conclusion is unchanged by allegations of intentional conduct. Rather, based on Plaintiffs' well-pleaded complaint, these allegations merely state a claim for gross negligence based on ISH's failure to act, which, again, cannot fall within the PREP Act's scope. See, e.g., Layne, 2022 WL 14225362, at *3 (holding that PREP Act "defenses do not affect whether Plaintiffs have sufficiently pled causes of action for negligence and gross negligence," thus declining to distinguish intentional from negligent conduct).

Additionally, this Court finds that Plaintiffs' allegations do not rise to the level of willful misconduct that would be necessary to satisfy the PREP Act's "stringent standard" for such a claim. See Ravain v. Ochsner Med. Ctr. Kenner, LLC, No. CV 21-2365, 2022 WL 3334694, at *4 (E.D. La. Aug. 12, 2022). As defined by the PREP Act, "[w]illful misconduct is a 'more stringent' standard of liability than is 'recklessness' or any 'standard of negligence.'" See id. (quoting 42 U.S.C. § 247d-6d(c)(1)(B)). Because Plaintiffs' gross negligence claim is clearly limited, by Plaintiffs' own words, to ISH's "reckless disregard" towards Coleman's care, the allegations simply do not meet the higher pleading standard for willful misconduct.

Notably, the burden appears to be on ISH, as the defendant, to demonstrate that Plaintiffs "could have brought" their willful misconduct claim under the PREP Act. See id. (quoting Manyweather v. Woodlawn Manor, Inc., 40 F.4th 237, 245 (5th Cir. 2022)). Here, ISH apparently argues the opposite—that Plaintiffs failed to plead willful misconduct at all. See Record Document 5-1 at 28. ISH failed to demonstrate how the complete preemption analysis is satisfied as to Plaintiffs' state-law intentional tort claims specifically. Even if ISH did argue for preemption of all of Plaintiffs' intentional tort claims,

16

this Court, like others before it, is "not convinced that the PREP Act is one of those rare statutes where a federal statutory scheme is so comprehensive that it entirely supplants state-law intentional tort claims." See <u>Ravain</u>, 2022 WL 3334694, at *5. Thus, for all of the above reasons, ISH's motion is **DENIED** as to Plaintiffs' claim of gross negligence against ISH.

## CONCLUSION

Based on the reasons outlined above,

**IT IS ORDERED** that ISH's Motion to Dismiss (Record Document 5) is **DENIED**.

An order consistent with the terms of this ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this <u>19th</u> day of December, 2022.

S. MAURICE HICKS, JR., DISTRICT JUDGE
UNITED STATES DISTRICT COURT